Cora MADRID, Plaintiff–Appellee,

v.

COUNTY OF APACHE, Defendant,

and

Melody Capps, Defendant–Appellant.

Cora Madrid, Plaintiff–Appellant,

v.

County of Apache; Melody Capps, Defendants–Appellees.

Nos. 06–16766, 06–16920.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 13, 2008.

Filed July 23, 2008.

Before: TASHIMA, McKEOWN, and GOULD, Circuit Judges.

MEMORANDUM *

Melody Capps ("Capps") appeals the judgment entered against her after a jury trial and award of $300,000 in compensato-

ry damages to Cora Madrid ("Madrid") in Madrid's action against Capps for intentional interference with contract under Arizona law based on Capps's termination of Madrid's employment in the Apache County assessor's office. Capps also appeals Judge Voss's denial of her pre- and post-verdict motions for judgment as a matter of law under Federal Rule of Civil Procedure 50, both of which posited that Capps, who served as county assessor when she terminated Madrid, was acting within the course and scope of her employment as a matter of Arizona law when the termination occurred. Madrid cross-appeals Judge Broomfield's grant of summary judgment to Apache County on Madrid's claim of retaliation under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–3(a). We have jurisdiction to consider these appeals under 28 U.S.C. § 1291, and we reverse both judgments.

### Capps's Appeal

■ Under Arizona's notice of claims statute, any person who wants to bring suit against a public entity or employee must first serve a notice on the entity or employee stating "facts sufficient to permit the public entity or public employee to understand the basis upon which liability is claimed." A.R.S. § 12–821.01(A). If a notice of claim is not filed within 180 days of the accrual of a cause of action, the claim is barred and no legal action may be taken on it. *Id.* While Madrid served a notice of claim on Apache County, she did not serve one upon Capps.

This omission is not fatal to Madrid's claim against Capps, however, if Capps was not acting in the course and scope of her employment when she terminated Madrid. The Arizona Court of Appeals has

* This disposition is not appropriate for publication and is not precedent except as provided    by Ninth Circuit Rule 36–3.

held that notices of claims need only be filed against public employees who were acting in the course and scope of their employment when the challenged conduct occurred. *See Crum v. Superior Court,* 186 Ariz. 351, 922 P.2d 316, 317–18 (Ariz. Ct.App.1996). Madrid has contended that Capps was not acting in the course and scope of her employment when she terminated Madrid because she did so for purely private reasons based on a long-standing personal dislike. Capps responds that firing someone, by its nature, can only be done in the course and scope of employment because an individual acting in a private capacity does not have authority to fire another.

The court in *Crum* made clear what the consequences would be for a plaintiff, like Madrid, who asserts that a public employee was not acting in his official capacity and who consequently declines to follow the notice of claims statute:

> the issue of whether the defendant was acting within the course and scope of his employment remains to be decided by the trier of fact, and a plaintiff who fails to file a notice of claim does so at his own risk.... [I]f the plaintiff does not file a notice, and the finder of fact concludes that the defendant was acting within the course and scope of his employment, the plaintiff cannot have judgment against the defendant.

*Id.* at 318. Here, whether Capps was acting in the course and scope of her employment when she terminated Madrid was submitted to the jury as a question of fact, and in ruling in Madrid's favor, the jury necessarily answered that question in the negative.[1] Although Arizona courts maintain that "[w]hether an employee's tort is within the scope of employment is generally a question of fact," it may be a question of law when "the undisputed facts make clear that the conduct was [within] the scope of employment." *See Smith v. American Express,* 179 Ariz. 131, 876 P.2d 1166, 1173 (Ariz.Ct.App.1994). Although hesitant to reverse a judgment resting on a jury verdict and jury fact determination, we conclude that this is such a case where undisputed facts make clear that Madrid's termination occurred in the scope of Capps's employment.

The Arizona Supreme Court has established a three-part test for determining whether an act was committed in the course and scope of employment: "An employee's conduct is within the scope of employment if and only if: a) it is the kind he is employed to perform; b) it occurs substantially within authorized time and space limits; and c) it is motivated, at least in part, by a purpose to serve the employer." *Arizona v. Schallock,* 189 Ariz. 250, 941 P.2d 1275, 1281 (1997). The parties do not dispute that terminating Madrid's employment in the county assessor's office is the type of act that Capps, as county assessor, was employed to perform, or that the firing took place within authorized time and space limits. The only question

---

1. Capps provided the language for the jury instruction on this point, which established course and scope of employment as a threshold issue in the case. The instruction read as follows:

> As a threshold matter, Cora Madrid must prove that Melody Capps was not acting in the course and scope of her employment as assessor for Apache County when Cora Madrid's employment was terminated. Melody Capps was acting within the course and scope of her employment as county assessor for Apache County if: (1) her actions were the kind she is authorized to perform; and (2) her actions were motivated at least in part by a purpose to serve the county. If you find that Melody Capps was acting within the course and scope of her employment when Cora Madrid's employment was terminated, you need go no further and you must find for Defendant Melody Capps and against Plaintiff Cora Madrid.

then is whether there was any "legally sufficient basis" for the jury to conclude, as it did, that Capps's action in firing Madrid was not motivated, at least in part, by a purpose to serve the county. *See Bell v. Clackamas County,* 341 F.3d 858, 865 (9th Cir.2003) ("We can overturn the jury's verdict [based on a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50] only if there is no legally sufficient basis for the jury to find" as it did).

In *Schallock,* which involved a supervisor accused of sexual harassment, the Arizona Supreme Court found that the matter of motivation cut both ways and ultimately "create[d] a jury question" on course and scope of employment: "In fondling the file clerks and offering advancement for sex, [the supervisor] was both serving the [employer] by running the office—a task he was explicitly authorized to do—and serving his personal desires. That his motives were mixed is of consequence, but the mixed motives cut both ways." 941 P.2d at 1283, 1284. More recently, the Arizona Court of Appeals reaffirmed the *Schallock* analysis in a case with very similar facts to this one. In *Dube v. Desai,* a doctoral student sued his former dissertation advisor for tortious interference with business opportunities for writing letters and e-mails to other university personnel critical of the student's work. 218 Ariz. 362, 186 P.3d 587, 587–90 (Ariz.Ct.App.2008). The student, Dube, asserted that the advisor, Desai, was motivated by a personal desire to undermine Dube's research, which had been critical of a proprietary formula owned by Desai. *See id.* The Arizona Court of Appeals affirmed the district court's grant of summary judgment in favor of Desai, holding that Dube's suit could not go forward because he had not served a notice of claim on Desai and Desai had been acting within the course and scope of his employment when the critical letters

and e-mails were sent. *Id.* at 589–92. Addressing Dube's contention that Desai's actions had been motivated by a personal desire to protect his formula and not by a desire to serve the university, the court invoked *Schallock:*

> The sexual harassment analysis in *Schallock* is conceptually analogous to the issue in the present case. In *Schallock,* our supreme court observed that, when a supervisor harasses employees while performing his authorized duties, the harassment can be incidental to his work and thus within the scope of his employment. 941 P.2d at 1283. Even though a supervisor may harass from some personal desire, he commits the harassment in the course and scope of performing his duties, so long as he is authorized to perform those duties. *Id.* In this case, Desai may have had a desire to protect C. Desai, Inc. and may have used his position at the University to advance a personal agenda. But even if this is true, all the actions of which Dube complains were incidental to Desai's work for the University.

186 P.3d at 591–92.

Finally, the court in *Desai* distinguished *Schallock,* which had held that the question of course and scope should be presented to a jury, concluding that "here, Dube has failed to produce any evidence showing that Desai's acts were not at least incidental to his job [and has therefore] failed to raise any issue of fact." *Id.* Similarly, Madrid has not produced any evidence that Capps's actions in terminating her employment, regardless of the reasons for those actions, were not at least incidental to Capps's job as county assessor; to the contrary, such staffing functions would necessarily be a central component of Capps's management position. We therefore conclude that *Schallock,* as clarified by *Dube,* is dispositive and that, as a mat-

ter of Arizona law, Capps was acting within the course and scope of her employment when she fired Madrid from her position in the county assessor's office. We reverse the denial of Capps's motion for judgment as a matter of law and hold that because Madrid did not serve a notice of claim on Capps within the period authorized by Arizona Revised Statutes ("A.R.S.") § 12–821.01, Madrid "cannot have judgment against" Capps. *See Crum,* 922 P.2d at 318.[2] On remand, we direct the district court to enter judgment for Capps on Madrid's intentional interference with contract claim under state law.

### Madrid's Cross—Appeal

■ Reviewing the district court's grant of summary judgment to Apache County de novo, we bear in mind our prior admonition that "[i]n evaluating motions for summary judgment in the context of employment discrimination, we have emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest v. GTE Serv. Corp.,* 360 F.3d 1103, 1112 (9th Cir.2004). Viewing the record in this light, we conclude, as did the district court, that Madrid has established a prima facie case of retaliation in violation of 42 U.S.C. § 2000e–3(a). By filing complaints with the Equal Employment Opportunity Commission ("EEOC") in 1997 and 2001, Madrid engaged in the "quintessential ac-

tion protected by" Title VII, *McGinest,* 360 F.3d at 1125 n. 19, and when the Apache County Board of Supervisors ("the board") declined to approve the county attorney's plan to hire Madrid as a legal secretary,[3] she suffered an "adverse employment decision" within the meaning of Title VII, *see Ruggles v. Cal. Polytechnic State Univ.,* 797 F.2d 782, 786 (9th Cir. 1986). Moreover, the fact that county manager Delwin Wengert had a retaliatory motive in that he was concerned that Madrid's past EEO activities might expose the county to "liability," and that he communicated these concerns to at least two of the board members who made the decision not to rehire Madrid, raise sufficient inferences of impropriety to satisfy the required causal nexus for purposes of Madrid's prima facie case.

We further conclude that the county met its burden of producing a legitimate, nondiscriminatory reason for its decision—namely, long-standing county Human Resources Policy A–5.4 discouraging the rehire of employees previously terminated for cause absent "special circumstances" and a "clear justification" for the rehire, as well as outside attorney Katherine Baker's interpretation of that policy in two letters reviewed by the board. Given that the county has met its production burden, the only remaining question is whether Madrid has presented a genuine issue of material fact to support "[her] ultimate burden of demonstrating that the [county's proffered] reason was merely a pretext for a

---

**2.** Because we conclude that judgment against Capps was improper under A.R.S. § 12–821.01, we need not reach Capps's alternative argument that she cannot be held liable for intentional interference with contract when she was acting as an agent of one of the parties to that contract.

**3.** Although Madrid raised seven distinct claims of retaliation in her amended com-

plaint filed on May 20, 2003, we agree with Judge Broomfield that all but one of these claims were not actionable. Madrid also did not mention the dismissal of any of her other retaliation claims in her briefs on appeal, and so we consider those issues waived and confine our analysis to the alleged retaliation based on the board's refusal to rehire Madrid as a legal secretary in 2003.

discriminatory motive." *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003) (quoting *Manatt v. Bank of Am.*, 339 F.3d 792, 800 (9th Cir.2003)). Stated another way, we must decide if there was a genuine issue of material fact on pretext.

Madrid presented testimony from Delwin Wengert's deposition that Wengert harbored a retaliatory motive, which she argues constitutes direct evidence of discriminatory animus. *See Stegall*, 350 F.3d at 1066 ("Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption.") (internal quotation marks omitted). When a plaintiff offers direct evidence of a discriminatory motive, "a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Id.* Although Wengert did not himself make the decision not to rehire Madrid, we have previously held that "[e]ven if a manager was not the ultimate decisionmaker, that manager's retaliatory motive may be imputed to the company if the manager was involved in the hiring decision." *Bergene v. Salt River Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1141 (9th Cir.2001) (citing *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1459–60 (7th Cir.1994)); *see also Vasquez v. County of L.A.*, 349 F.3d 634, 640 (9th Cir.2003) (explaining that where a supervisor who had displayed discriminatory animus in the past was not the decisionmaker, the plaintiff would have to show "a nexus between [that supervisor's] discriminatory [animus] and [the] subsequent employment decisions").

On our review, we come to the conclusion that Wengert was "involved in the . . . decision" not to rehire Madrid in several respects. First, he discussed the proposal to rehire Madrid and his concerns about that proposal with at least two of the three board members, even though all board members insisted that these discussions did not influence their decision-making process. Second, he did not follow the board's directive at the January 7, 2003 meeting to submit the county attorney's letter outlining the special circumstances that justified rehiring Madrid to outside counsel, who would then "do the required background investigation and come back to us with a recommendation. . . ." Instead, before receiving the letter of special circumstances from the county attorney, Wengert instructed human resources manager Karen Houston to contact Katherine Baker and ask her for "an interpretation" of Policy A–5.4 as it pertained to the potential rehiring of Madrid. Specifically, rather than asking that a background check be conducted, as the board had directed, Wengert apparently asked Baker, according to her understanding of the assignment, to "advise the county on the issues surrounding [Madrid's] potential rehiring, including . . . whether the county must undertake the burden and expense of a background check every time a former employee, who has been terminated for cause, seeks re-employment." Third, Wengert acknowledged that in his discussions with Baker, he made her aware of his "concerns" about hiring Madrid. A reasonable jury could conclude from these facts that the way Wengert presented the issues to Baker influenced the conclusions she reached, on which the board in turn relied, and that this level of involvement, combined with Wengert's direct discussions with board members about rehiring Madrid, was sufficient to allow imputation of Wengert's retaliatory motive to the board. *See Bergene*, 272 F.3d at 1141; *Vasquez*, 349 F.3d at 640.

We conclude that this evidence and the reasonable inferences that can be drawn from it are sufficient to create a fact issue as to whether the county's proffered reason for refusing to hire Madrid was a

pretext for retaliation. We thus reverse the grant of summary judgment to Apache County and remand Madrid's retaliation claim to the district court for further proceedings.[4]

Each party shall bear its own costs.

**REVERSED AND REMANDED WITH INSTRUCTIONS TO ENTER JUDGMENT FOR DEFENDANT–APPELLANT as to 06–16766; REVERSED AND REMANDED as to 06–16920.**

---

4. We reject the argument that the county was entitled to summary judgment on the separate basis that Madrid was not qualified for the legal secretary position. Under our decision in *Ruggles*, the employer has the burden of showing by a preponderance of the evidence that the same adverse employment action would have been taken "even in the absence of discriminatory or retaliatory intent," for example, by showing that the decision would also have been justified by the applicant's lack of qualification. 797 F.2d at 786. No such evidence was presented here, as none of the board members were asked in their depositions about Madrid's qualifications or lack thereof. Thus summary judgment on this alternative ground is not warranted on the current record.